# In the United States Court of Federal Claims

No. 19-1408
(Filed:  15 October 2021)

```
*****************************************
SARAH E. PRICE,                          *
                                         *
            Plaintiff,                   *    Motion for Summary Judgment; RCFC 56;
                                         *    Rails-to-Trails; Easement; Fee Simple; Issue
v.                                       *    Preclusion; Deed Construction; Georgia
                                         *    Property Law; Centerline Presumption;
THE UNITED STATES,                       *    Warranty Clause; Reservation of Cultivation
                                         *    Rights; Strips-and-Gores-Doctrine
            Defendant.                   *
                                         *
*****************************************
```

*Steven M. Wald*, with whom was *Michael J. Smith*, Stewart Wald & McCulley LLC, St. Louis, MO, for plaintiff.

*Elizabeth R. McGurk* and *Dustin J. Weisman*, Trial Attorneys, with whom was *Paul E. Salamanca*, Deputy Assistant Attorney General, Environment & Natural Resources Division, Department of Justice, Washington DC, for defendant.

## OPINION AND ORDER

**HOLTE**, **Judge**.

Plaintiff, owner of land abutting a former railroad line operated by Norfolk Southern Railroad ("NSR") in Atlanta, Georgia, alleges the United States' conversion of the abandoned railroad adjoining her property pursuant to the National Trails System Act is a taking under the Fifth Amendment.  Plaintiff moved for partial summary judgment of liability, alleging NSR and its predecessors merely held an easement for railroad purposes at the time of abandonment.  The government filed a cross motion for summary judgment arguing the railroad company held the land in fee simple.  For the following reasons, the Court **GRANTS** plaintiff's motion for partial summary judgment and **DENIES** the government's cross-motion for partial summary judgment, and finds NSR and its predecessors only held an easement at the time of abandonment.

## I. Background

### A. Factual History of the Land in Dispute

The Court summarizes the factual history from the complaint and the parties' summary judgment briefing.  The parties do not raise factual disputes in the cross-motions for summary judgment.  Transcript ("Tr.") at 7:14–20, ECF No. 28 (Transcript of Oral Argument on 2 June 2021).

Plaintiff's property sits along a segment of former railroad line in Atlanta, Georgia, commonly known as the "Decatur Street Belt" ("Railroad Segment"). Pl.'s Compl. at 1–2, ECF No. 1; Gov't Cross-Mot. for Summ. J. and Supp. Mem., and Resp. to Pl.'s Mot. for Partial Summ. J. on Liability ("Gov't MPSJ") at 12, ECF No. 18. The Railroad Segment was originally obtained by the Georgia Air Line Railroad through a deed from Jerome Bearse ("Bearse deed"). Pl.'s Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. on Liability ("Pl.'s MPSJ Mem.") at 7, ECF No. 17. The Bearse deed reads in relevant part with disputed aspects underlined and italicized:

> In consideration of the benefit and advantage to me accruing by the construction...of the Georgia Air Line Rail Road as well as the receipt of *Two hundred dollars to me paid*. I have this day bargained and sold and do hereby transfer and Convey unto the Georgia Air Line Rail Road Company and *its successors and assigns* all the land contained within one hundred feet in width on each side of the Track [o]r Roadway (measuring from the center) of *any portion of the lot of land hereinafter described through which said Rail Road may be constructed run and operated the land hereby conveyed being cut off* and a portion of land lots number [ ] in the 17th... of one originally Henry now Fulton County Ga and *Jerome Bearse reserves the privilege of cultivating the Company right of way* up to the tract on either side the same being the place whereon said Bearse now lives.
>
> To have and to hold said tract or parcel of land unto said Georgia Air Line Rail Road Company *for Rail Road purposes for ever in fee simple*
>
> Witness my hand and seal this 29th day of April AD 1869 Signed sealed and delivered

Pl.'s MPSJ Mem. at 12–13 (emphasis added). Over the next twenty-five years, the Railroad Segment underwent ownership changes. Gov't MPSJ at 5. The Southern Railway Company eventually assumed control of the Railroad Segment and operated it from 1894 to 1982. *Id.* In 1982, the Southern Railway Company consolidated with the Norfolk and Western Railway Companies, both as subsidiaries of the Norfolk Southern Corporation. *Id.* NSR controlled the Railroad Segment until abandonment, leading to the present dispute. *Id.*

On 27 March 2017, NSR filed a verified notice of exemption to abandon 0.68 miles of its railroad line along the Railroad Segment between milepost DF 632.42 and milepost DF 633.10 with the United States Surface Transportation Board ("STB"). Pl.'s Mot. for Partial Summ. J. on Liability ("Pl.'s MPSJ") at 1, ECF No. 16. Transferring the Railroad Segment right-of-way to Atlanta BeltLine, Inc. ("ABI") was to promote urban development and improvement of Atlanta's infrastructure. *See* Pl.'s Ex. A, ECF No. 16-1 (verified notice of exempt abandonment by NSR). On 1 September 2017, ABI filed a request with the STB for interim trail use of the Railroad Segment. Pl.'s MPSJ at 2. On 28 September 2017, the STB issued a Notice of Interim Trail Use ("NITU") for the Railroad Segment. *Id.* On 17 October 2017, ABI and NSR notified the STB they entered into a trail use agreement for the Railroad Segment. *Id.*

The Railroad Segment in dispute is between milepost DF 632.10 and milepost DF 633.10. *Id.* at 1. NSR owned the land, for railroad purposes, extending approximately one mile along the Railroad Segment. Gov't MPSJ. at 5. The Railroad Segment stretched across and abutted property owned by plaintiff. Pl.'s Compl. at 2. Plaintiff owned this land adjacent to the Railroad Segment on the date of abandonment and when the NITU was granted. *Id.*

### B. Procedural History

On 12 September 2019, plaintiff filed a complaint alleging the government, by operation of the Trails Act, took her land without just compensation in violation of the Fifth Amendment of the United States Constitution. *See* Pl.'s Compl. Plaintiff filed a motion for partial summary judgment on liability on 1 October 2020. *See* Pl.'s MPSJ. On 9 November 2020, the government filed its cross-motion for summary judgment and response to plaintiff's motion for summary judgment. *See* Gov't MPSJ. On 2 June 2021, the Court held oral argument on the parties' cross-motions for partial summary judgement on liability. *See* Tr.

### C. Overview of Cases Concerning the Bearse Deed

Before plaintiff filed the current action, two other cases examined the Bearse deed to determine if the deed conveyed an easement or fee. The Superior Court of Fulton County, Georgia, ruled the Bearse deed conveyed fee simple and not an easement, when the court decided an adverse possession issue. *Atlanta Dev. Auth. v. Ragan*, Civil Action File No. 2016CV273389 (Superior Ct. Fulton Cnty., Ga. Sept. 19, 2017). Conversely, another judge on this court held the Bearse deed conveyed an easement—and not fee simple—when the court decided a similar takings issue pursuant to the Trails Act. *Ansley Walk Condo. Ass'n, Inc. v. United States*, 142 Fed. Cl. 491 (2019).

## II. Summary Judgment Standard

Summary judgment is appropriate where the evidence demonstrates there is "no genuine dispute as to any material fact and that the movant is entitled to judgement as a matter of law." Rules of the Court of Federal Claims ("RCFC") 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A genuine issue is one that "may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. A fact is material if it might significantly affect the outcome of the suit. *Id.* at 248. In determining if summary judgment is appropriate, a court will draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A party seeking summary judgment bears the burden of establishing the "absence of any genuine issues of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting *Catrett v. Johns-Manville Sales Corp.*, 756 F.2d 181, 184 (D.C. Cir. 1986)).

When the moving party has met this burden, the burden shifts and the nonmovant must point to sufficient evidence to show a dispute exists over a material fact allowing a reasonable fact finder to rule in its favor. *Anderson*, 477 U.S. at 256. The evidence need not be admissible, but mere denials, conclusory statements, or evidence that is merely colorable or not significantly probative will not defeat summary judgment. *Celotex*, 477 U.S at 324.

## III. Parties' Arguments

Plaintiff seeks just compensation under the Fifth Amendment of the United States Constitution for the taking of her property. Pl.'s MPSJ Mem. at 2. Plaintiff argues the railroad held an easement in the land at issue, and the court in *Ansley Walk* correctly determined the Bearse deed conveyed an easement. *Id.* at 8. Plaintiff urges the Court to construe the Bearse deed as conveying an easement using a weight of the factors analysis under Georgia law. *Id.* at 14. Plaintiff states the Court should focus on the reservation of cultivation rights while assigning less weight to the consideration paid for the deeded land. *Id.* at 14, 23. Plaintiff believes construing the deed as an easement is the only construction that reconciles all parts of the deed. *Id.* at 26. Additionally, plaintiff claims the scope of the easement was limited to railroad purposes and the issuance of the NITU to authorize conversion of the railroad right-of-way for use as a recreational trail is beyond the scope of the easement. *Id.* at 28. Plaintiff also seeks judgment pursuant to the doctrine of issue preclusion as the court in *Ansley Walk* found the Bearse deed conveyed easement under Georgia law. *See* Pl.'s Suppl. Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. on Liability ("Pl.'s Suppl.") at 1–2, ECF No. 22.

The government asserts the railroad held the Railroad Segment subject to the NITU in fee simple. Gov't MPSJ at 7. The government contends Georgia law presumes a deed conveys fee and requires an assessment of the deed in its entirety, and the deed in this case indicates the parties intended to convey fee simple. *Id.* at 8, 12. The government further contends plaintiff misinterprets Georgia Law by arguing consideration should be given little weight. *Id.* at 20. The government directs the Court to consider the railroad statute in effect when the deed was conveyed to determine the intent of the parties. *Id.* at 22. The government also contends plaintiff fails to overcome the presumption of fee. *Id.* at 24. Finally, the government asserts a Georgia court has already examined the Bearse deed and held it conveyed fee simple and not an easement. *Id.*

## IV. Applicability of the Georgia Superior Court's Interpretation of the Bearse Deed in *Atlanta Dev. Auth. v. Ragan*

In *Atlanta Dev. Auth. v. Ragan,* the Superior Court of Fulton County, Georgia, interpreted the Bearse deed regarding a dispute over land along the Atlanta BeltLine, Inc. *Atlanta Dev. Auth. v. Ragan*, Civil Action File No. 2016CV273389, at 1 (Superior Ct. Fulton Cnty., Ga. Sept. 19, 2017) ("*Ragan*"). The government urges the Court to adopt the *Ragan* decision in interpreting the Bearse deed because the *Ragan* court "applied the [Georgia] Supreme Court holding of *Jackson v. Rogers* and interpreted the deed pursuant to that case." Tr. at 12:10–14, 13:2–4. Plaintiff disagrees, asserting the *Ragan* decision is a trial court decision and deserves no deference by this Court. Tr. at 13:5–18. Plaintiff emphasizes the *Ragan* decision is mere *dicta* because the court does not explain why it concluded the deed conveyed fee simple. Tr. at 13:13–18, 17:1–16 ("Here there's no reasoning, so you can't understand why the Court reached the opinion that it did.") ("And so it's literally not a holding; it's literally *dicta*."). The government rebuts in arguing the trial court could not have addressed the underlying claims without analyzing the deed and reasoning it conveyed fee simple. Tr. at 17:21–18:4 ("I don't know that I

agree that it is *dicta* . . . [and] the Court first undertook the analysis of is there fee simple or is there an easement.").

The government stated the *Ragan* parties' arguments closely resembled the parties' arguments in this case.[1]  The government agrees the *Ragan* decision is "not precedential," as a federal court need only defer to the highest state court's interpretation of state law.  Tr. at 18:23, 12:18–24 (discussing *Gurley v. Rhoden*, 421 U.S. 200 (1975)); Tr. at 21:14–18 (Counsel for the government stated to the Court, "you're not required to follow the *Ragan* decision.").  Further, the *Ragan* court only discussed the Bearse deed in one sentence:  "With respect to Defendants' argument that the 1869 Deed conveyed an easement rather than fee simple, the Court finds that the 1869 Deed conveyed fee simple title under *Jackson v. Rogers*, 205 Ga. 581, 54 S.E.2d 132 (1949)."  *Ragan* at 4 (emphasis omitted).  The government's argument the Court should defer to *Ragan* is further undermined by *Albano*, where another judge on this court reviewed the *Ragan* decision and found:

> It is possible that a Georgia court would find that the interest conveyed by the Bearse deed was not adequately litigated to lend a preclusive effect if a related case was brought in state court.  Even if it was adequately litigated, it is also possible that *Ragan*'s lack of analysis for its finding that the Bearse deed conveyed an interest in fee indicates that the issue was not necessarily decided, especially given the presence of an alternative holding.

*Albano v. United States*, 152 Fed. Cl. 343, 349 n.3 (2021).  The government agrees the *Albano* court found *Ragan* "wasn't precedential."  Tr. at 19:4–21:18.

---

[1] During oral argument in this case, the government agreed the 19 September 2017 *Ragan* order does not contain analysis of the Superior Court's conveyance determination; however, the government suggested the Court review the basis of the *Ragan* order, the 7 September 2017 oral argument transcript, as the *Ragan* parties' arguments closely resembled the parties' arguments in this case and the transcript allegedly contained the Superior Court's analysis. Tr. at 13:19–14:23.  When the Court asked whether the Georgia Superior Court explained its reasoning in the *Ragan* transcript, the government responded, "I don't believe so."  Tr. at 14:24–15:6.  To be clear, while the substance of the *Ragan* parties' arguments were akin to the parties' arguments in this case, the positions are reversed because in *Ragan* the landowners were defendants.  At oral argument, *Ragan*-plaintiff stated:  "[D]efendants have identified [the Bearse] deed, this 1869 deed, and they have argued that this deed does not transfer a fee simple title.  It transfers only an easement."  Gov't MPSJ Ex. E ("*Ragan* Tr.") at 33:1–3.  *Ragan*-defendants proposed a "five-factor test" to support finding easement conveyance.  *Ragan* Tr. at 33:4–13.  *Ragan*-plaintiff did agree "there are all kinds of factors that courts consider in connection with determining whether or not a transfer is an easement or fee simple," but plaintiff asserted "in the dozens of Georgia Supreme Court cases . . . construing a deed and determining whether or not it's fee simple or an easement, you will not find a single reference to the famous five-factor test . . . because it doesn't exist."  *Ragan* Tr. at 33:4–15.  *Ragan*-defendants also sought to introduce expert affidavits regarding the conveyance, to which plaintiff argued construing the deed "is a pure legal issue" and it is "incredible that someone from 2017 can opine as to the intent of parties in 1869."  *Ragan* Tr. at 16:4–13.  While the *Ragan* transcript included the parties' arguments, it lacked analysis from the court regarding the Bearse deed.  The *Ragan* court merely stated, "I will take the motions under advisement."  *Ragan* Tr. at 60:2.  Without record of the *Ragan* court's reasoning, it is hard to discern why the Georgia Superior Court found fee conveyance.  The court might have found fee conveyance because *Ragan*-defendants errantly argued for expert affidavits or because they incorrectly asserted a "five-factor" test.  Another possible explanation is the court's conveyance determination was not necessary for the court's ultimate decision.  *Ragan*, Civil Action File No. 2016CV273389, at 4 ("even if the 1869 Deed only conveyed an easement, the Court finds that Defendants have no basis to assert title claims based on the railroad company's alleged abandonment.").  Regardless, the *Ragan* court does not explain its reasoning, therefore, this Court does not find either the *Ragan* order or the *Ragan* transcript persuasive.

The Court does not find *Ragan* persuasive as neither the *Ragan* order nor the *Ragan* transcript contained the court's analysis of how it found the Bearse deed conveyed fee simple instead of an easement. *Ragan* was not a takings case, rather, the issue before the state trial court was liability for trespass. *Ragan* at 5–6. Further, *Gurley v. Rhoden*, 421 U.S. 200 (1975), merely states a federal court should defer to the highest state court's interpretation of state law, thus the Court need not to defer to *Ragan* because it is a Superior Court of Georgia decision. *See Ansley Walk*, 142 Fed. Cl. at 500 n.1 (noting "state court decisions generally have no precedential value in this Court, so Georgia law is, at best merely persuasive in a Fifth Amendment Takings analysis."). Accordingly, the Court will not consider the *Ragan* decision to determine if the Bearse deed conveyed an easement or fee simple.

## V.  The Application of the Doctrine of Issue Preclusion Against the Government

Plaintiff argues the government is barred from re-litigating whether the Bearse deed conveyed an easement or a fee, as *Ansley Walk* is a final decision ruling the Bearse deed conveyed an easement. *See* Pl.'s Suppl. at 1. In *United States v. Mendoza*, the Supreme Court held issue preclusion does not apply to the United States government; however, plaintiff argues this Court should apply issue preclusion against the government, because "none of the Supreme Court's policy concerns are invoked by this case, and furthermore because for all practical purposes there is mutuality of the parties." *Id.* at 5; *see United States v. Mendoza*, 464 U.S. 154 (1984).

The government argues the Supreme Court "unequivocally stated [in *United States v. Mendoza*], 'We hold that the United States *may not* be collaterally estopped on an issue such as this, adjudicated against it in an earlier lawsuit brought by a different party.'" Gov't Reply to Pl.'s Resp. to Def.'s Cross-Mot. for Summ. J. on Liability ("Gov't Reply") at 12, ECF No. 23 (quoting *Mendoza*, 464 U.S. at 155). It contends the "Supreme Court in *Mendoza* made clear the United States often defends lawsuits, like this one, where the underlying issues are the same." Gov't Reply at 15. The government argues the *Ansley Walk* case and the present case involve separate parcels of land, with separate owners, who filed separate takings lawsuits against the United States. *Id.* The government further notes the dismissal of claims in *Ansley Walk* intended for there to be no collateral estoppel. *Id.* at 16 ("[W]hether or not collateral estoppel can arise by reason of a settlement agreement depends on the intent of the parties as reflected in their agreement."). The government explained at oral argument "an issue is not actually litigated for purposes of collateral estoppel unless the parties to a stipulation manifest an intent to be bound in a subsequent action," Tr. at 103:11–16, and in *Ansley Walk*, there was no "language in the settlement agreement that says [the parties will] be bound by [the decision]." Tr. at 103:17–22.

The doctrine of issue preclusion, or collateral estoppel, "protects the finality of judgements by 'preclud[ing] relitigation in a second suit of claims actually litigated and determined in the first suit.'" *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012) (quoting *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994)). Issue preclusion "does not include any requirement that the claim (or cause of action) in the first and second suits be the same. Rather, application of issue preclusion centers around whether an issue of law or fact has been previously litigated." *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994). A party

seeking to apply the doctrine of issue preclusion must show: "(1) the previous determination was necessary to the decision; (2) the identical issue was previously litigated; (3) the issue was actually decided in a decision that was final, valid, and on the merits; and (4) the party being precluded from relitigating the issue was adequately represented in the previous action." *United Access Techs., LLC v. Centurytel Broadband Servs. LLC*, 778 F.3d 1327, 1331 (Fed. Cir. 2015). "[T]he party asserting preclusion bears the burden of showing 'with clarity and certainty what was determined by the prior judgment.'" *Id.* (citations omitted).

In *Mendoza*, the Supreme Court held non-mutual, offensive collateral estoppel does not apply against the United States. *Mendoza*, 464 U.S. at 158–63. The government is involved in more cases than a private litigant and it is more likely to be involved in lawsuits against different parties which nonetheless involve the same legal issues. *Id.* at 160. As the Court finds the Bearse deed conveys an easement *infra*, the Court does not analyze or decide whether the government is precluded from arguing the Bearse deed conveys fee.

## VI. Review of the Bearse Deed in Light of Georgia State Law and Interpretations of Deeds by Georgia State Courts

In this Court, state law defines property rights. The Court applies Georgia law to determine if the Bearse deed conveys an easement or fee simple. *See Hardy v. United States ("Hardy I")*, 127 Fed. Cl. 1, 8 (2016) (citing *Preseault v. United States*, 100 F.3d 1525, 1534 (Fed. Cir. 1996) (en banc)) ("When reviewing these deeds, the court must examine them in light of the common law and the law of Georgia at the time that they were executed."). Georgia precedent requires a court examine each deed as a whole. *See generally Latham Homes Sanitation, Inc. v. CSX Transp., Inc.*, 538 S.E.2d 107, 109 (Ga. 2000); *Barber v. S. Ry. Co.*, 274 S.E.2d 336 (Ga. 1981); *Rogers*, 54 S.E.2d at 136; *Jackson v. Sorrells*, 92 S.E.2d 513, 514 (Ga. 1956).

The Bearse deed contains elements pointing to interpretations of both a conveyance of an easement and fee. The three primary clauses in the deed—"[t]wo hundred dollars to me paid"; "for ever in fee simple"; and "[to] its successor and assigns"—seemingly point to an interpretation of fee transfer. Reviewing similar deed language in comparable Georgia Supreme Court cases, however, highlights that Georgia law requires a comprehensive analysis of deeds in dispute. As an initial example, the 1956 *Sorrells* case reviewed a deed with three fee simple oriented clauses and the Georgia Supreme Court held the deed transferred an easement. *See Sorrells*, 92 S.E.2d at 514. The *Sorrells* court compared the deed at issue to another deed and held the grantor intended to transfer an easement based on the reservation of cultivation rights. *Id.* This Court must accordingly conduct a comprehensive analysis of the Bearse deed as the Georgia Supreme Court would.

### A. Georgia State Law Presumption of a Conveyance of Fee

The government contends the Bearse deed must be viewed in light of "Georgia's additional case law and Georgia's statutory presumption of fee." Tr. at 10:3–8; Tr. at 77:11–14. Plaintiff agrees the statute provides a presumption of fee and "if there's not limiting language . . . it's going to be a fee." Tr. at 76:13–77:9. Nevertheless, plaintiff suggests the Court consider the

deed as a whole to determine if there is limiting language and other indications of an easement. *Id.*

Georgia Code states "[e]very properly executed conveyance shall be construed to convey the fee unless a lesser estate is mentioned and limited in that conveyance." GA. CODE ANN. § 44-6-21 (2021). The Bearse deed will be presumed to convey fee simple; however, despite this presumption, this case involves a lengthy deed, and the Court must review the deed as a whole, "not merely disjointed parts of it." *Rogers*, 54 S.E.2d at 136.

## B.  Consideration Paid in the Bearse Deed to the Grantor by the Railroad

The government argues the $200 consideration in the Bearse deed is substantial and supports a fee conveyance. Tr. at 71:3–13. Plaintiff argues consideration is "just not important," because the Court is "left to guess as to what amount of consideration would even be substantial . . . [for] property values from the 1860s." Tr. at 72:5–12. Plaintiff contends the Court cannot "guess" whether consideration is substantial, especially when there is no evidence it is, and this guessing renders consideration meaningless. Tr. at 72:14–19. The government argues the Court can determine if consideration is substantial by comparison to other cases where courts found a certain consideration amount substantial, Tr. at 73:4–9, but the Court is not required to do this exercise. Tr. at 72:20–73:4. The government also acknowledges it has not "gone back and done those calculations" to determine if the consideration paid in the Bearse deed is a fair market value for the land conveyed. Tr. at 73:10–23.

Substantial consideration generally points to a fee conveyance. *Johnson v. Valdosta, M. & W. R. Co.*, 150 S.E. 845, 847 (Ga. 1929). While substantial consideration could be indicative of a fee conveyance, the very nature of railroad easements—invasive, noisy, and perpetual operations—readily explains why a grantor might require a non-nominal fee from the railroad in exchange for such easements. *See Terr. of New Mexico v. U.S. Trust Co.*, 172 U.S. 171, 183 (1898) (describing characteristics of railroad easements); *see also Duggan v. Dennard*, 156 S.E. 315, 316 (Ga. 1930) (describing disruption to grantor's property by railroad operations). The parties compared the $200 consideration in the Bearse deed to the deeds in *Rogers*, *Sorrells*, and *Savannah*. *See Rogers*, 54 S.E.2d 132; *Sorrells*, 92 S.E.2d 513; *Mayor of Savannah v. Barnes*, 96 S.E. 625 (Ga. 1918). The *Rogers* and *Sorrells* deeds both had consideration of ten dollars. *Rogers*, 54 S.E.2d at 133; *Sorrells*, 92 S.E.2d at 513. The court in *Rogers* found there was a conveyance of fee, despite the low amount of consideration. *Rogers*, 54 S.E.2d at 138. The government asserts the *Rogers* court finding fee with such a low consideration is "stronger evidence for a finding that the Bearse deed did convey fee," because "[i]f the *Rogers* [deed] conveyed fee at $10, then the Bearse deed surely conveyed fee at $200." Tr. at 70:14–18. The *Sorrells* court, however, found an easement conveyance with the same nominal ten-dollar consideration. *Sorrells*, 92 S.E.2d at 514. The *Savannah* court found the deed conveyed an easement despite the substantial consideration of $750. *Savannah*, 96 S.E. at 626. The government distinguishes the *Savannah* deed from the Bearse deed by arguing the substantial consideration in *Savannah* was to reimburse the grantor for money he expended before the conveyance and "wasn't necessarily payment for fee title." Tr. at 69:20–70:3. In short, while consideration is not meaningless, it is merely one factor in a court's analysis—and an inconclusive factor at that.

The Bearse deed has greater consideration than the *Rogers* and *Sorrells* deeds, where two deeds with the same ten-dollar consideration were respectively construed to convey a fee simple and an easement. *Rogers*, 54 S.E.2d at 138; *Sorrells*, 92 S.E.2d at 514. The Bearse deed also has much less consideration than the *Savannah* deed, where the court found an easement. *Savannah*, 96 S.E. at 626. The parties in this case did not determine what the fair market value of the property in question would have been in the 1860s. Tr. at 73:10–23, 73:24–74:11. Hence, the Court recognizes consideration is only one aspect and is not dispositive for finding a fee conveyance. *See Rogers*, 54 S.E.2d at 586–87 (instructing courts to consider the whole deed, not just "disjointed" parts).

### C. The "Right of Way" Clause Dictates the Railroad Company's Rights on the Land Conveyed to Them in the Bearse Deed

The Bearse deed "right of way" clause reads, "Jerome Bearse reserves the privilege of cultivating the Company right of way." Pl.'s MPSJ Mem. at 12. The Government argues the "right of way" clause does not disqualify a deed from conveying fee, Tr. at 26:22–27:14, and a "right of way" clause is generally not decisive, because it can have different meanings depending on "where in the deed the language occurs and what other terms the deed has." Tr. at 29:10–13. The Government cites *Valdosta*, 150 S.E. at 847, to support its position that "right of way" language must be present in the warranty or habendum clause to transfer an easement. Tr. at 27:12–22, 28:22–29:3 ("The phrase 'right of way' in the conveyance of a deed does not necessarily mean an easement was conveyed."). Plaintiff disagrees with the government's contention the "right of way" clause must be in the habendum clause to indicate the deed conveys an easement, and plaintiff argues the "right of way" phrase in the primary language of the Bearse deed describes the property right being granted, which relates back to the granting clause. Tr. at 29:25–30:7.

Georgia property law generally interprets a "right of way" clause as an indication of easement conveyance. *Jackson v. Crutchfield*, 191 S.E. 468, 470 (Ga. 1937). The "right of way" clause is used to dictate what a railroad company may do on the land conveyed. *See Askew v. Spence*, 79 S.E. 2d 531, 532 (Ga. 1954) (describing right of way for track or roadbed may be located and established by a second party on the grantor's lands). The "right of way clause," however, is not always dispositive of conveying an easement. *See Valdosta*, 150 S.E. at 847 (finding fee conveyance when the deed had "right of way" in its habendum clause as railroad "right of way" has a twofold meaning and is sometimes merely descriptive).

While a "right of way" clause in a deed is not dispositive of easement conveyance, it is indicative of such a conveyance. *See Crutchfield*, 191 S.E. at 470. The phrase "the Company right of way" is only in the body of the Bearse deed, not in the habendum clause; however, the habendum clause relates back to the "right of way" clause by referring to "said tract or parcel of land." Pl.'s MPSJ Mem. at 12. Thus, the phrase, "the Company right of way," tends to support easement conveyance. *See id.*

### D.  The "For Railroad Purposes Only" Clause in the Bearse Deed

The government argues without a reversionary clause, the "for railroad purposes" clause in the Bearse deed is merely descriptive because "if the parties intend for something to happen if the parcel is no longer used for railroad purposes, then [the deed] should state that."  Tr. at 32:21–33:2.  The government relies on *Hollomon v. Bd. of Educ. of Stewart Cnty.*, 147 S.E. 882 (Ga. 1929) to support this contention but was unable to cite any supportive *Hollomon* language.  Tr. at 31:13–34:9.  The government also read from *City of Atlanta v. Jones*, 69 S.E. 571 (Ga. 1910), "[i]f parties desire that a forfeiture shall result or that an estate shall terminate, they should so state."  Tr. at 33:3–9 (citing *Jones*, 69 S.E. at 572).  The government further asserts words such as "so long as," "until," and "during" in a reversionary clause are "what causes the limitation on the estate, not just saying that it's for a certain purpose."  Tr. at 34:2–7 (citing *Atlanta Consol. St. Ry. Co. v. Jackson*, 34 S.E. 184 (1899)).

The government further supports its argument by asserting *Latham*, 538 S.E.2d 107, "described certain aspects of a deed as being inconsistent with the conveyance of fee."  Tr. at 35:4–9.  The government asserts the Bearse deed is different from the *Latham* deed because the Bearse deed does not contain the "express right to the railroad to cut timber and undergrowth from the right of way."  Tr. at 64:18–21 (citing *Latham*, 538 S.E.2d at 575).  The government states it is the "enumeration of specific rights and burdens [ ] placed on the grantee" combined with the reversionary clause that makes a deed inconsistent with conveying fee.  Tr. at 46:21–24.  The government contends the lack of a similar timber clause in Bearse as in the *Latham* deed supports conveyance of a fee.  *See* Tr. at 64:15–65:9.  The government argues when there is no reservation clause and no enumerated grantee rights, it is inconsistent with conveyance of an easement.  *Id.*

Plaintiff argues, "there's no requirement in any of the Georgia Supreme Court cases that a reversionary clause be present or absent, nor could there be because that's not even an easement concept."  Tr. at 34:11–15.  Plaintiff further avers a reversion clause is not an easement concept because, "when an easement is extinguished, nothing reverts" as "the easement simply unburdens the land."  Tr. at 34:15–25.  Plaintiff's counsel stated, "it would make no sense to talk about whether a reversionary clause is present or absent in defining an easement."  Tr. at 34:23–25.  Plaintiff contends "for railroad purpose" in the Bearse deed supports an easement conveyance, because "it's a statement of what the land can be used for, which you wouldn't need to do if the grantor was conveying a fee."  Tr. at 37:2–7.

Courts routinely consider clauses containing "for railroad purposes only" when construing a deed.  *Rogers*, 54 S.E.3d at 137.  While the clause must be considered, it is "not of such significance as to require a holding that an *easement only* was conveyed."  *Id.* (emphasis added).  "For railroad purposes only" clauses are viewed as a "provision . . . wholly unnecessary and surplusage had title been conveyed."  *Askew*, 79 S.E.2d at 532.  While this language is not

determinative, it indicates a party's intent to limit the scope of a deed and behavior of the grantee.[2]  *Ansley Walk*, 142 Fed. Cl. at 501; *see also Askew*, 79 S.E.2d at 532.

The Court finds "for railroad purposes only" clause indicated Mr. Bearse meant to limit the scope of the deed as well as the railroad company's behavior, which affirms Mr. Bearse intended to transfer an easement to the railroad company; a limiting clause such as "for railroad purposes only" may be unnecessary only if fee is conveyed, because fee would allow the grantee to have complete control over the land.  *See Askew*, 79 S.E.2d at 532.  The "for railroad purposes" was likely purposefully included in the Bearse deed and would not be needed if the grantor intended to convey fee.  *See id.*  The government attempts to use *Latham* to support the need of a reversion clause, but the *Latham* court remanded to the trial court the question of fee or easement and lacks supporting language for the reversion argument.  *See Latham*, 538 S.E.2d at 107.  While recognizing the purpose clause is only one aspect in determining if a deed conveys easement or fee, the Court finds it is supportive of the deed conveying easement.  *See Askew*, 79 S.E.2d at 532 (stating a for railroad purposes clause is unnecessary if title is conveyed and such a clause is supportive of conveyance of an easement).

### E.  The Role of a Warranty Clause and the Description of Land in the Bearse Deed

The Bearse deed lacks a warranty clause and describes the land as "a portion of land lots number [ ] in the 17th… of one originally Henry now Fulton County Ga."  Pl.'s MPSJ Mem. at 12–13.  The deed also describes the land as "any portion of the lot land hereinafter described through which said Rail Road may be constructed run and operated."  *Id.*  The government asserts "a lack of warranty clause is obviously not dispositive" because Georgia law does not require railroad conveyances "to be precisely described."  Tr. at 42:5–12.  The government cites *Rogers* to show a deed with no warranty clause and imprecise description of land can still grant fee.  *Id.*  The government also states, "in railroad conveyances, the consent of the grantor identifies and locates the property conveyed in fee, even when the conveyance is imprecisely described."  Tr. at 38:10–15 (citing *Valdosta*, 150 S.E. at 848).  The government, however, does agree the Bearse deed lacks a clear description of the parcel conveyed.  Tr. at 39:20–22.

Plaintiff contends the lack of a warranty clause and imprecise description of the land in the Bearse deed clearly "indicates an easement."  Tr. at 40:4–20.  Plaintiff directs the Court to consider these two factors together because "when you put them all together, they start to paint a picture of an easement."  Tr. at 40:18–20.  Plaintiff recognizes these two factors alone do not conclusively establish an easement conveyance but are supportive of such a finding.  Tr. at 41:16–24.

The Georgia Supreme Court considers the absence of a warranty clause a factor favoring easement conveyance.  *Askew*, 79 S.E.2d at 532; *see also Safeco Title Ins. Co. v. Citizens & S. Nat'l Bank*, 380 S.E.2d 477, 479 (Ga. 1989).  Georgia courts, alternatively, are more likely to

---

[2] The *Ansley Walk* court stated "for rail road purposes" was of primary importance as this clause "indicates intent by Mr. Bearse to limit the scope of the deed and the behavior of Georgia Air, and weighs in favor of finding the deed an easement."  *Ansley Walk*, 142 Fed. Cl. at 501.  Regarding scope of easement, the *Ansley Walk* court accordingly concluded: "[T]he Court is persuaded that the easements conveyed in the instruments are limited to railroad purposes only."  *Ansley Walk*, 142 Fed. Cl. at 503.

find a fee conveyance if a warranty deed is used.  *See Crutchfield*, 191 S.E. at 470.  Courts have further failed to recognize fee conveyance when "vague, conditional, and undefined terms" describe the land because a fee conveyance "relates to unique, specific real property."  *Ansley Walk*, 142 Fed. Cl. at 501. When a deed conveys a strip or tract of land to the railroad without precise description, it is an indication of the parties' intent to convey an easement.  *Latham*, 538 S.E.2d at 109.

Following the footsteps of the *Ansley Walk* court, the Court analyzes together the imprecise description of land and lack of a warranty clause.  *Ansley Walk*, 142 Fed. Cl. at 501. The Bearse deed lacks a warranty clause and uses only generalized language to describe the land.  *See* Pl.'s MPSJ Mem. at 12–13.  The Bearse deed merely describes the land as "a portion of land lots number [ ] in the 17th… of one originally Henry now Fulton County Ga."  *Id.*  The deed also generally describes the land as "any portion of the lot of land hereinafter described through which said Rail Road may be constructed run and operated."  *Id.*  Reviewing Georgia caselaw precedent, this Court finds the lack of a warranty deed and imprecise description of land to be consistent with conveyance of an easement.  *See Askew*, 79 S.E.2d at 532 (stating lack of a warranty clause is supportive of an easement conveyance); *see also Latham*, 538 S.E.2d at 109 (stating imprecise description of conveyed land indicates an easement).

### F.  The Importance of the Reservation of Cultivation Rights in the Bearse Deed

The Bearse deed contains a reservation of cultivation rights, which reads:  "Jerome Bearse reserves the privilege of cultivating the Company right of way up to the tract on either side."  Pl.'s MPSJ Mem. at 12.  The government agrees a reservation clause generally indicates an easement but argues, there was a "legally significant difference between the use of the word 'privilege' or 'right' in the retention clause."  Tr. at 43:2–7.  The government asserts permissive language like "privilege" in the Bearse deed, implies a "landowner may cultivate the soil, not that it has a right to cultivate the soil."  Tr. at 43:18–20.  The government argues, "it's not impossible in Georgia, as Judge Smith suggests, that a deed allowing the permissive use of cultivation would still be fee."  Tr. at 43:22–25 (citing *Fox v. Norfolk S. Corp.*, 802 S.E.2d 319 (Ga. 2017)).

Plaintiff emphasizes there are no cases in Georgia conveying fee when the grantor reserved some use of the land in the right of way.  Tr. at 45:20–25.  Plaintiff lists "nine cases that actually interpreted fee versus easement in Georgia" and all nine cases "held [the deed transferred] easements where the grantor reserved some use of the land in the right of way," while there are "none that go the other way."[3]  *Id.*  Plaintiff argues a "reservation to the grantor that is inconsistent with railroad[] . . . would impinge on the railroad's use of the property," further supporting a reservation of rights indicating easement conveyance.  Tr. at 61:20–22. Plaintiff maintains, while reservation of rights is not the only factor to consider in determining easement versus fee, it supports finding an easement when pieced together with other factors in

---

[3] The nine cases plaintiff notes are as follows:  *Ansley Walk Condo. Ass'n, Inc. v. United States*, 142 Fed. Cl. 491 (2019); *Hardy v. United States ("Hardy I")*, 127 Fed. Cl. 1 (2016); *Latham Homes Sanitation, Inc. v. CSX Transp., Inc.*, 538 S.E.2d 107 (Ga. 2000); *Barber v. S. Ry. Co.*, 274 S.E.2d 336 (Ga. 1981); *Jackson v. Sorrells*, 92 S.E.2d 513 (Ga. 1956); *Askew v. Spence*, 79 S.E.2d 531 (Ga. 1954); *Byrd v. Goodman*, 25 S.E.2d 34 (Ga. 1943); *Jackson v. Crutchfield*, 191 S.E. 468 (Ga. 1937); and *Rogers v. Pitchford*, 184 S.E. 623 (Ga. 1936).  Tr. at 61:11–17.

the deed.  Tr. at 61:23–62:4 ("[W]e don't have a case where the only easement factor was a reservation.").

The reservation of cultivation rights carries significant weight in determining if a deed conveys an easement or fee.  *See Hardy v. United States ("Hardy II")*, 129 Fed. Cl. 513, 516 (2016); *Sorrells*, 92 S.E.2d at 514 (holding a deed which reserved the conveyor's right to "cultivate" constituted an easement).  Georgia courts routinely consider reservation of cultivation rights an indication of intent to transfer an easement, especially when combined with additional easement factors.  *See Ansley Walk*, 142 Fed. Cl. at 501 ("The Georgia Supreme Court has noted that the presence of [cultivation] language suggests an easement."); *Hardy I*, 127 Fed. Cl. at 9 ("[T]he presence of a reservation in a deed, such as a conveyor's right to cultivate the land up to the right-of-way, offers proof of intent to convey an easement") (citing *Sorrells*, 92 S.E.2d at 514); *Latham*, 538 S.E.2d at 109 (holding where a grantor retained uses of the land for agricultural purposes conveyed an easement); *Barber v. S. Ry. Co.*, 274 S.E.2d 336, 337 (Ga. 1981) (holding reserving farming privileges in land not absolutely occupied by the railroad and reserving the right to cultivate up to the track conveyed an easement); *Askew*, 79 S.E.2d at 531–32 (holding a deed conveyed an easement where grantor "shall have the right to cultivate so much of said land as does not interfere with its use for railroad purposes"); *Byrd v. Goodman*, 25 S.E.2d 34, 37 (Ga. 1943) (holding a deed reserving a right to cultivate up to the road-bed conveyed an easement); *Crutchfield*, 191 S.E. at 470 (holding a deed where the grantor reserved the right to cultivate land not necessary for use by the railroad conveyed an easement); *Rogers v. Pitchford*, 184 S.E. 623, 623–624 (Ga. 1936) (holding a deed reserving the right to cultivate until needed for railroad purposes "conveyed only an easement").  Indeed, the government was unable to cite a single Georgia Supreme Court case finding a fee transfer if the deed reserved cultivation rights.  Tr. at 47:20–48:16 (The Court asked the government, "just to confirm . . . there's no Georgia Supreme Court case discussing a fee transfer, but that includes cultivating rights as a reservation for the grantor," to which counsel responded, "[n]ot that I'm aware of.").

Under Georgia law, the inclusion of a reservation of cultivation rights clause suggests an easement.  *Sorrells*, 92 S.E.2d at 514.  Other judges on this court, in interpreting disputed deeds under Georgia law, have determined deeds containing a reservation of cultivation rights typically indicates an easement.  *Ansley Walk*, 142 Fed. Cl. at 501 (quoting *Hardy II*, 129 Fed. Cl. at 516).  The Court agrees with the *Ansley Walk* court, and others, the reservation of cultivation rights strongly supports finding conveyance of an easement.

Regarding the government's argument a reservation clause using the word "privilege" cannot support the transfer of an easement, the court in *Fox*, 802 S.E.2d 319, was not interpreting a deed.  Tr. at 43:7–44:5 (The government's counsel describes *Fox* as "an adverse possession case.").  The government's argument is further undercut as the word "privilege" is not used in the *Fox* deed.  Tr. at 43:16–18 (The government's counsel argues "the word 'privilege' doesn't appear in *Fox*, but it's a permissive word.").  Accordingly, the Court finds no significant difference between use of the word "privilege" instead of "right."  It would be contradictory if a grantor conveyed fee while retaining the ability to use the land for their own benefit.  *See Askew*, 79 S.E.2d at 531–32 (describing a reservation of cultivation rights supports conveyance of an easement).

- 13 -

**G. The "Strips-and-Gores" Doctrine Has Been Adopted by Georgia Courts to Discourage Fee Conveyance of Long, Narrow Strips of Land**

According to plaintiff, the strips-and-gores doctrine is an old Georgia common law concept existing in the 1800s when the Bearse deed was constructed. [4]   Tr. at 51:4–8.  In some jurisdictions, the strips-and-gores doctrine is known as the centerline presumption.  According to this doctrine, when a deed conveys land bounded by a railroad right of way, the boundary of the land is the centerline of the railroad right of way.  11 C.J.S. *Boundaries* § 63 (2021).  This is the legal construction of the grant unless a party argues the express terms of the grant rebut the presumption that the strip was included in the grant.  *Id.*  This doctrine avoids "the accidental creation of property interests in the strips and gores of land located between the edge of a parcel" and the centerline of the railroad right of way that bounds the parcel, "so that unproductive and valueless strips are not held by detached ownership."  *Id.*  The strips-and-gores doctrine does not help ascertain the property interest conveyed; the doctrine only illuminates the boundary of the property interest granted.  *Id.*

Both parties agree the centerline presumption issue is not related to the interpretation of the Bearse deed, rather it is only used to support the application of the strips-and-gores doctrine.  Tr. at 6:8–7:13.  The government acknowledges if the Court finds the Bearse deed conveys an easement, the centerline presumption applies to plaintiff's property rights.  Tr. at 7:3–10.

Plaintiff asks the Court to apply the doctrine despite the general notion of courts not applying later doctrines to earlier deeds as the doctrine creates an overriding policy limiting "vacuums in ownership" and avoids granting a narrow strip of land by fee simple, because "if that land ever gets abandoned, it's going to get used by somebody and there won't be disputes about ownership."  Tr. at 51:1–3, 51:18–24.  Plaintiff further supports applying the doctrine by stating there is an "uneven application of [the] concept . . . around the country" and "looking at *Fambro* [the courts] have no problem reaching back in time and using this doctrine."  Tr. at 52:6–7, 52:14–16 (citing *Fambro v. Davis*, 348 S.E.2d 882, 884 (Ga. 1986)) (applying the strips-and-gores doctrine to a deed executed before the doctrine was recognized by courts).

The government asserts the strips-and-gores doctrine came after the Bearse deed, so it should not be applied to interpret the Bearse deed.  Tr. at 52:17–53:18 ("[The government] is not aware of any application of [the strips-and-gores doctrine] to railroads . . . at least [in the 1860s].").  The government argues, at the time of the Bearse deed, no one was "contemplating the railroad not being there," and "railroads were acquiring land in fee."  Tr. at 53:5–16.  According to the government, since most railroads in Georgia at the time of the Bearse deed acquired "long . . . narrow strip[s]" of land in fee simple, it is "incongruous with the strips and gores doctrine."  Tr. at 54:21–55:3.

Georgia law presumes a purchaser of land abutting a public easement takes title to the centerline.  *See R.G. Foster & Co. v. Fountain*, 114 S.E.2d 863, 871 (Ga. 1960) (citing *Long v.*

---

[4] When addressing the strips-and-gores doctrine the court in *Ansley Walk* seems to have incorrectly referenced the "Stripes and Gorges" doctrine.  *Ansley Walk*, 142 Fed. Cl. at 501.  Although only a few letters off, this Court walks it back and now references the "strips-and-gores" doctrine.  *See Fambro*, 348 S.E.2d at 884.

*Faulkner*, 108 S.E. 370 (Ga. 1921)).  The rationale behind a centerline presumption is the strips-and-gores doctrine, as the *Fambro* court explained:

> It is favorable to the general public interest that the fee in all roads should be vested either exclusively in the owner for the adjacent land on one side of the road, or in him as to one half of the road, and as to the other half, in the proprietor of the land on the opposite side of the road.  This is much better than that the fee in long and narrow strips or gores of land scattered all over the country and occupied or intended to be occupied by roads, should belong to persons other than the adjacent owners.  In the main, the fee of such property under such detached ownership would be and forever continue unproductive and valueless.

*Fambro*, 348 S.E.2d at 884 (citing *Johnson v. Arnold*, 18 S.E. 370, 372 (Ga. 1893)).  The Georgia Supreme Court has extended the legal principals in *Fambro* to the construction and interpretation of deeds, holding:

> The rule avoids the undesirable result of having long, narrow of strips of land owned by people other than the adjacent landowner . . . . [T]his rule of construction also should govern the construction of deeds that designate a railroad right-of-way as a boundary.  This Court has, in fact, already applied it to language in a will to determine title to an abandoned railroad right-of-way.  We now adopt this rule for use in construing deeds that have as a boundary a railroad right-of-way.

*Descendants of Bulloch, Bussey & Co. v. Fowler*, 475 S.E.2d 587, 589 (Ga. 1996).  Other judges on this court recognized *Fambro* as precedential law, stating for deeds containing a boundary to a railroad right of way, the strips-and-gores doctrine "illuminates the boundary of the property interest granted." *Jackson v. United States*, 135 Fed. Cl. 436, 455 (2017); *see also, Hardy I*, 127 Fed Cl. at 10 (citing *Fambro*, 348 S.E.2d at 884 (quoting *Arnold*, 18 S.E. at 372)) (explaining the strips-and-gores doctrine ensures adjacent landowners get the land in fee to increase the value of the land).  The *Ansley Walk* court stated, "such a policy is applicable here as the Bearse deed specifically notes that the 'land conveyed [is] being cut off.'"  *Ansley Walk*, 142 Fed. Cl. at 502.

Applying Georgia common law, the Court considers and applies the strips-and-gores doctrine to construe the Bearse deed.  *See Fambro*, 348 S.E.2d at 884, *Rogers*, 54 S.E.2d at 136–37; *Ansley Walk*, 142 Fed. Cl. at 502–03; *Hardy I*, 127 Fed. Cl. at 10; Donald J. Kochan, *Deeds and the Determinancy Norm: Insights from Brandt and Other Cases on an Undesignated, Yet Ever-Present, Interpretive Method,* 43 FLA. ST. U. L. REV. 793 (2016) ("courts must (and arguably do) interpret the terms in deeds and land grants as having a fixed meaning set contemporaneously with the transfer and based on the discernable intent and expectations of the parties at the time of the conveyance or grant.").  The language in the Bearse deed—specifically the "land conveyed being cut off"—taken together with Georgia's established precedent on the strips-and-gores doctrine, weighs in favor of easement conveyance.  *See Fowler*, 475 S.E.2d at 589 (extending the strips-and-gores doctrine to deeds containing railroad right of ways as support of conveyance of an easement).

**H. Plaintiff Argues the *Sorrells* Deed Best Resembles the Bearse Deed and Government Argues the *Rogers* Deed Best Resembles the Bearse Deed**

During oral argument, the Court invited both parties to provide one Georgia Supreme Court case which best supports their argument.  Tr. at 94:13–15, 94:21.  Plaintiff asserts the deed in *Sorrells* best resembles the Bearse deed.  Tr. at 59:20–22.  The government disagrees and asserts the deed in *Rogers* is most similar to the Bearse deed.  Tr. at 63:25–64:7.

Plaintiff acknowledges the "*Sorrells* [deed] is, in fact, very, very similar to *Rogers*, as is [the Bearse] deed," but plaintiff notes the *Sorrells* court distinguished *Rogers* because "*Sorrells* contained a reservation of rights to the grantor to cultivate and *Rogers* did not."  Tr. at 58:12–17.  Plaintiff argues the reservation clause is important because "where deeds qualify how land will be used, it's an easement," and "[i]f it's a fee grant, there's no reason to specify how the land will be used."  Tr. at 58:19–22.  Plaintiff also references Georgia Code Section 44-6-20 to demonstrate "why reservation is important, because it conflicts with the railroad use of the land."  Tr. at 58:22–59:3 ("And Georgia law says, in that section, that a fee simple estate is 'one in which the owner is entitled to the entire property with unconditional power of disposition.'") (citing GA. CODE ANN. § 44-6-20 (2021).

Plaintiff further points to two additional differences between the Bearse deed and the *Rogers* and *Sorrells* deeds:  the consideration paid; and granting of the premises as a right of way.  Tr. at 59:22–60:3.  Plaintiff asserts the differences "cancel each other out" and "favor [plaintiff] a little bit" because the "consideration in the Bearse deed is higher than in the *Sorrells* deed, but on the other hand, the Bearse deed refers to the grant of premises . . . as a right of way and *Sorrells* doesn't."  Tr. at 59:23–60:3.  Plaintiff argues, "if those two [differences] cancel each other out, then we're left with really identical deeds to *Sorrells*."  Tr. at 60:4–5.  Plaintiff urges the Court to look at the Bearse deed as a whole and given its close similarity to the *Sorrells* deed as well as the presence of a reservation clause, the Court should find the Bearse deed conveyed an easement.  Tr. at 62:16–24.

The government argues the Bearse deed is more similar to the deed in *Rogers* because neither deed puts "any requirements on the grantee."  Tr. at 64:6–7.  The government notes the *Sorrells* deed required the railroad to agree to keep up all stopgaps,[5] while there is "[n]o similar requirement upon the railroad in the Bearse deed."  Tr. at 64:25–65:9.  The government contends other Georgia caselaw supports its position that a burden on the grantee is a key component in a deed to indicate conveyance of an easement.  Tr. at 66:9–23 (citing *Askew*, 79 S.E.2d 531; *Latham*, 538 S.E.2d 107).  It asserts *Askew* "talk[s] about, very specifically, stopgaps and requirements on the grantee being inconsistent with the conveyance in fee."  Tr. at 66:13–15.  The government argues, while "there was a reservation of agricultural rights" in *Latham*, the court found the deed conveyed an easement as the clause granting the railroad the express right to cut undergrowth was "inconsistent with conveyance of fee."  Tr. at 66:16–22; *Latham*, 538 S.E.2d at 109.

---

[5] Stopgaps, or stock gaps, are grids built on a railroad track which, when joined with fences, can contain livestock.  *See* GA. CODE ANN. § 50-16-103 (2021).

The Georgia Supreme Court held the presence of a reservation of cultivation rights clause suggested conveyance of an easement. *Sorrells*, 92 S.E.2d at 514. The *Sorrells* court found the phrase, "the grantor should retain the use of the land not actually used as a road bed" demonstrated "it was clearly the intention of the parties to the deed . . . to receive an easement to construct and operate a railroad." *Id.* The court also noted conveyance of an easement was supported by multiple elements of the deed: "nominal" consideration; the grantor "reserving the right to cultivate"; grantee was required to "keep up stock gaps"; "the land is conveyed for use as a railroad"; and "the land conveyed was a strip out of the middle of the grantor's tract with no access between them." *Id.*

The *Rogers* court found the disputed deed contained language pointing to either an easement or fee. *See Rogers*, 54 S.E.2d 132. The deed does not contain "the term 'easement' or 'right of way' or any other expression" from which it could be inferred there was an intent to convey merely an easement. *Id.* at 136. The deed did not contain a warranty clause, but the habendum clause included the words "forever in fee simple." *Id.* The consideration is nominal, but this did not require a finding of an easement because other cases have determined fee where the "consideration expressed was only $1." *Id.* at 137 (citing *Woods v. Flanders*, 181 S.E. 83 (Ga. 1935)).

The chart below compares the Bearse deed to both the *Sorrells* and *Rogers* deeds:

| Deed Provision | Bearse deed | *Sorrells* (Easement) | *Rogers* (Fee) |
|---|---|---|---|
| Consideration | $200 | $10 | $10 |
| Habendum clause | its successors and assigns, all the land | its successors and assigns, all the land | its successors and assigns, all the land |
| Reservation clause | Jerome Bearse reserves the privilege of cultivating the Company right of way | Reserving the right to cultivate up to road bed, the Road agreeing to keep up all stock gaps. | |
| Purpose clause | for Railroad purposes, forever in fee simple. | for Railroad purposes, forever in fee simple. | for Railroad purposes, forever in fee simple. |

When construing a grant as either fee or easement, the Court recognizes the whole deed must be analyzed and acknowledges the value of "determinancy norms" in the interpretation of

dees. [6]  The Bearse, *Sorrells*, and *Rogers* deeds all contain the same purpose and habendum clauses.  Although the Bearse deed has substantially higher consideration, the Court recognizes consideration is not dispositive.  *See Rogers*, 54 S.E.2d at 136–37 (instructing courts to look at the whole deed and not just "disjointed" parts of it).  The distinguishing difference is both the Bearse deed and the *Sorrells* deed contain a reservation clause.  The Georgia Supreme Court reached different decisions on this distinction:  the *Sorrells* court ruled the presence of a reservation clause suggests conveyance of an easement, *Sorrells*, 92 S.E.2d at 334–35, while the *Rogers* court determined conveyance of fee when the deed lacked a reservation clause.  Applying Georgia law, the Court finds the presence of this reservation clause is indicative of easement conveyance, especially when considered in comparison to similar cases.  *See Rogers v. Pitchford*, 184 S.E. 623 (Ga. 1936) (holding a deed reserving right to cultivate until needed for railroad purposes indicated easement conveyance); *Hardy II*, 129 Fed. Cl. at 516 (holding disputed deeds construed under Georgia law with "particular terminology" of cultivation rights "typically indicates an easement" was conveyed).

**I.   Additional Georgia Supreme Court Decisions Clarify the Issue of Whether the Bearse Deed Conveys Fee or an Easement**

Both parties cite *Barber v. S. Ry. Co.*, 274 S.E.2d 336 (Ga. 1981), to support the Bearse deed conveying an easement or fee.  Plaintiff asserts the deeds in *Barber* are "very much like" the Bearse deed, and in ruling two of the four deeds conveyed easement the "Georgia Supreme Court . . . identified a reservation of rights as the pivotal difference."  Tr. at 60:17–22, 91:25–92:4.  Plaintiff further contends when a deed specifies "what land can be used for, it's indicative of an easement because you wouldn't need to do that if there was a fee simple grant."  Tr. at 91:18–20.

The government asserts the key difference in the *Barber* deeds is the reference to timber as the company is tasked "in protecting the road from timber," which is "an assertion of rights on the grantee," not just the presence of the reservation clause.  Tr. at 90:17–21; 92:5–14.  The government also argues the amount of consideration was different between the deeds in *Barber*.  Tr. at 93:2–12.  The government, however, acknowledges it is "factually true" the primary difference "between [the] four deeds discussed in the *Barber* case [is] that the two deeds where the Court found an easement both have reservation clauses and the other two deeds do not."  Tr. at 93:18-24.  The government further argues a reservation clause alone "is not a sufficient suggestion to overcome the presumption of fee," as the reservation clause is "not one of the

---

[6] The Court must look at the deed in its entirety with fixed meaning at the time of transfer to be consistent with Georgia law.  Professor Donald J. Kochan, in his article *Deeds and the Determinacy Norm*, addresses the need for "determinacy norms" in the interpretation of deeds.  Donald J. Kochan, *Deeds and the Determinacy Norm: Insights from Brandt and Other Cases on an Undesignated, Yet Ever-Present, Interpretive Method,* 43 FLA. ST. U. L. REV. 793 (2016).  He defines the parameters of "determinacy norm" as:  "In order to satisfy the determinacy norm for deed interpretation, courts must (and arguably do) interpret the terms in deeds and land grants as having a fixed meaning set contemporaneously with the transfer and based on the discernable intent and expectations of the parties at the time of the conveyance or grant."  *Id.* at 793.  This is because courts "'traditionally recognize[] the *special need for certainty and predictability where land titles are concerned*' and . . . [are] extremely conscious of a presumptive 'unwilling[ness] to upset settled expectations' of the parties to the title transfer."  *Id.* at 794.  This prevents the government from "reserv[ing] an easement for one use and decades later convert[ing] it (without re-bargaining or paying more) to a different use that was not anticipated, expected, or bargained for at the time of the original transfer."  *Id.* at 797.

clauses that the Georgia courts have found to be inconsistent with the conveyance of fee."  Tr. at 94:3–12.

The *Barber* court construed four deeds and found two conveyed easement, and two conveyed fee.  *Barber*, 274 S.E.2d at 337.  The court referred to the four deeds as the "Elizabeth Lowe deed," "James Peek deed," "T.J. Lowe deed," and "J.S. Lowe deed."  *Id.*  The court stated, "under *Jackson v. Rogers* . . . the Elizabeth Lowe and J.S. Lowe deeds must be viewed as conveying fee-simple title," because the Elizabeth Lowe and J.S. Lowe deeds are "not distinguishable in any material respect from the deed under consideration in *Jackson v. Rogers*."  *Id.*  Applying the same reasoning, yet reaching an opposite result, the Georgia Supreme Court decided "[u]nder *Jackson v. Sorrells* . . . the James Peek and T.J. Lowe deeds must be viewed as conveying mere easements," as the James Peek and T.J. Lowe deeds are "not distinguishable in any material respect from the deed in *Jackson v. Sorrell*."  *Id.*

The chart below compares the Bearse deed to each of the four *Barber* deeds:

| Deed Provision | Bearse deed | Elizabeth Lowe (fee) | James Peek (easement) | T. J. Lowe (easement) | J. S. Lowe (fee) |
|---|---|---|---|---|---|
| Consideration | $200 | $5 | $5 | $1 | $1 |
| Habendum clause | its successors and assigns, all the land | its successors and assigns all the land | its successors and assigns all the land | its successors or assigns a strip of land 200 feet in width | its successors and assigns being one ninth (1/9) each undivided in a strip of land 200 feet in width |
| Reservation clause | Jerome Bearse reserves the privilege of cultivating the Company right of way | | the farming privileges in that portion not absolutely occupied by said railroad is hereby reserved | reserving the right to cultivate up to track unless wanted for Railroad purposes | |
| Purpose clause | for Railroad purposes, forever in fee simple. | for Railroad purposes, forever in fee simple | for Railroad purposes forever in fee simple | in fee simple for Railroad purposes only | in fee simple for Railroad purposes |
| Reversion clause | | This deed to be void if said railway is not constructed through said tracts of land | This deed shall be void if said Railway is not constructed through said lot of land. | | |
| Warranty | | | | we do warrant the title to such land against the lawful claims of all persons | we do warrant the title to such land against the lawful claims of all persons |

The four *Barber* deeds and the Bearse deed contain fundamentally similar habendum and purpose clauses. The Bearse deed consideration is higher than any of the *Barber* deeds; however, as stated *supra*, consideration alone is not dispositive. *See Rogers*, 54 S.E.2d at 136–

37. The Elizabeth Lowe and James Peek deeds both have a reversion clause, which the T.J. Lowe, J.S. Lowe, and Bearse deeds lack. Of all clauses the *Barber* court considered the reservation clause most determinative. The Elizabeth Lowe and J.S. Lowe deeds lacked a reservation clause, which led the *Barber* court to determine fee was conveyed in these two deeds under the *Rogers* reasoning. *Barber*, 274 S.E.2d at 337. The James Peek and T.J. Lowe deeds both contained a reservation clause, reserving farming privileges and cultivation rights. The *Barber* court found this reservation clause supported finding an easement under the *Sorrells* precedent. *Id.* The Bearse deed also contains a reservation of rights clause, making it similar to the James Peek and T.J. Lowe deeds. Applying the *Barber* court's reasoning to the Bearse deed, the Court finds the presence of a reservation clause indicates the grantor of the Bearse deed intended to convey an easement; the *Barber* and *Sorrells* precedent clarify the Court should consider the presence of a reservation clause as support for easement conveyance. *See Barber*, 274 S.E.2d at 337 (holding reservation clause indicates conveyance of an easement); *Sorrells*, 92 S.E.2d at 513 (holding retention of rights indicates fee conveyance).

## VII. Easement or Fee in the Bearse Deed

As discussed in detail *supra*, the Bearse deed contains the following elements of fee: non-nominal consideration of two-hundred dollars; the phrase to "its successors and assigns;" and a habendum clause stating, "for ever in fee simple." A full reading of the deed, however, supports the conveyance of an easement. The elements supporting conveyance of an easement are: the "Company right of way" clause; a "for railroad purposes" clause; no warranty clause; imprecise description of the land; and a retention of the cultivation rights. Easement is also supported by the Georgia courts' strips-and-gores doctrine which discourages the conveyance of long, narrow strips of land and supports finding easement conveyance. In conclusion, the Court finds the language in the Bearse deed demonstrates the grantor's intent to transfer an easement, not a fee simple estate, to the railroad company. *See Ansley Walk*, 142 Fed. Cl. 491; *Barber*, 274 S.E.2d 336; *Sorrells*, 92 S.E.2d 513; and *Rogers*, 54 S.E.2d 132.

## VIII. Conclusion

The Bearse deed overcomes the presumption of fee required by Georgia law and conveys only an easement to the railroad. Accordingly, the following is ordered: (1) Plaintiff's motion for partial summary judgement is **GRANTED**; and (2) The government's cross-motion for partial summary judgment is **DENIED**. The parties **SHALL FILE** a joint status report proposing a timeline for further proceedings consistent with this opinion on or before **12 November 2021**.

**IT IS SO ORDERED**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge